IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | : | |
| | : | Case No. 1:17-cr-0080 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Denying Motion and Supplemental |
| Nelson Jones, | : | Motion for Compassionate Release |
| | : | |
| Defendant. | : | |

This matter is before the Court on Defendant's Motion for Compassionate Release (Doc. 149) and Supplemental Motion for Compassionate Release (Doc. 156).  The Government has filed a Response (Doc. 158) in opposition.  Defendant Nelson Jones seeks a compassionate release from prison due to the threat posed by COVID-19.  For the reasons that follow, the Court will **DENY** Jones's Motion and Supplemental Motion.

I.      **BACKGROUND**

A.      **Criminal History and Sentencing**

Jones was arrested in June 2017 pursuant to a warrant.  (Docs. 2, 5.)  The Magistrate Judge ordered him to be detained.  (Doc. 11.)  On September 20, 2017, the Government charged Jones in a Second Superseding Indictment[1] as follows:

Count 1: Conspiracy to use a firearm during and in relation to a crime of violence on May 22, 2017 in violation of 18 U.S.C. § 924(o);

Count 2:  Armed bank robbery on May 22, 2017 in violation of 18 U.S.C. §§ 2113(a) & (d);

Count 3:  Use of a firearm during and in relation to a crime of violence on May 22, 2017 in violation of 18 U.S. C. § 924(c);

---

[1]  Four co-defendants also were charged in the Second Superseding Indictment.

1

Count 4:  Armed bank robbery on May 13, 2017 in violation of 18 U.S.C.
§§ 2113(a) & (d);

Count 5:  Use of a firearm during and in relation to a crime of violence on May
13, 2017 in violation of 18 U.S. C. § 924(c)(1)(C)(i);

Count 6:  Conspiracy to use a firearm during and in relation to a crime of violence
on June 20, 2017 in violation of 18 U.S.C. § 924(o); and

Count 7:  Armed bank robbery on June 20, 2017 in violation of 18 U.S.C.
§§ 2113(a) & (d).

(Doc. 33 at PageID 86–90.)

Jones entered into a Plea Agreement with the Government in which he agreed to plead

guilty to Counts 3 and 5 of the Second Superseding Indictment.  (Doc. 127.)[2]  Jones stipulated to

the following Statement of Facts in the Plea Agreement:

On May 22, 2017 at approximately 11:00 am, Malcolm Lorenzo Jones and Nelson
Jones robbed the Key Bank located at 3575 Springdale Road.  As Malcolm
entered the bank he displayed and brandished a black revolver while ordering the
bank employees and customers to the ground.  Malcolm demanded that the bank
teller place the money on the counter which she complied.  Once he had
everyone's attention, Malcolm then went to the front door and opened it for
Nelson to enter.

When Nelson entered the bank an off-duty police officer entered immediately
behind him.  The off-duty officer pulled his firearm and demanded that both
Malcolm and Nelson get on the ground.  As Malcolm moved towards the ground
he raised his firearm and fired a shot at the off-duty officer.  A gunfight ensued.
Malcolm jumped over the bank counter in an attempt to dodge the shots from the
off-duty officer while exchanging return fire.  Nelson slowly exited the front door
while shots were being exchanged and remained immediately outside the front
door signaling for Malcolm to get out of the bank.  While Malcolm was struck by
at least one bullet, both he and Nelson managed to flee the bank on foot.
Approximately $3,480 was stolen.  At the time of this offense, the deposits of Key
Bank were insured by the Federal Deposit Insurance Corporation.

On May 13, 2017 at approximately 9:30 am, Nelson Jones and Hope Tolbert
entered the North Side Bank and Trust located at 11 1l St. Gregory St. Nelson
entered the bank first and immediately brandished a firearm announcing that it
was a robbery.  Nelson demanded that the bank teller hand over the money from

---

[2]  Jones entered into a Plea Agreement with the Government on February 7, 2018, and then into a [Second] Plea
Agreement on January 24, 2019.  (Docs. 80, 127.)  The [Second] Plea Agreement reflected a December 2018
amendment to the statutory penalties provided in 18 U.S.C. § 924.  (Docs. 80, 127.)

the cash drawer and Hope Tolbert assisted in collecting the money from the cash drawers. Together they fled the bank. Total loss sustained by the bank was approximately $6,490.00. At the time of this offense, the deposits of North Side Bank and Trust were insured by the Federal Deposit Insurance Corporation.

(*Id.* at PageID 331.) The Government and Jones agreed to recommend to the Court that he receive a sentence of 204 months imprisonment—120 months on Count 3 and 84 months on Count 5 to run consecutively—followed by 5 years of supervised release. (*Id.* at PageID 328.)

On April 4, 2019, the Court accepted Jones's guilty plea and sentenced Jones to 204 months in prison. (Doc. 133.) As part of sentencing, the Court adopted the Presentence Report ("PSR") without change. (Doc. 134 at PageID 345.) The Court determined in the PSR that Jones participated in three armed bank robberies. (PSR at p. 7–8.) Two bank managers reported being traumatized by the robberies. (*Id.* at p. 8–9.) One hoped to leave the banking industry, and the other was seeking a transfer to a corporate position. (*Id.*) The employees working at the third bank at the time of that robbery all left employment with the bank. (*Id.* at p. 8.) Jones admitted through a Sentencing Memorandum filed by his attorney that his crimes were "serious and caused irreparable harm to many bank employees." (Doc. 110 at PageID 276.)

Jones had multiple juvenile and adult convictions prior to the bank crimes that were the subject of this case. He had been convicted as an adult of receiving stolen property, robbery, driving under a suspended driver's license, and a weapons charge. (PSR at p. 16–18.) At the time of sentencing, he had served approximately five years in state prison for different offenses. (*Id.*) As a result of these crimes, Jones had a criminal history category of IV under the Sentencing Guidelines. (Doc. 134 at PageID 345.)

The Court was aware at the time that it sentenced Jones that he suffers from health problems. Jones has Type II diabetes and requires daily insulin shots to manage his blood sugar level. He suffers from diabetic neuropathy and food allergies. Finally, he has a prior history of

other conditions including cellulitis, high cholesterol, and eczema.  Jones was 6-foot and 3-inches tall and weighed 255 pounds in 2019.  (PSR at p. 21–22.)

**B.     Motion for Compassionate Release**

Jones is incarcerated at FCI Gilmer and has an estimated release date of December 21, 2031.  He filed a *pro se* Motion for Compassionate Release on December 16, 2020.  Counsel was appointed to him, and then counsel filed a Supplemental Motion for Compassionate Release on his behalf on February 2, 2021.  The Government filed a Response in opposition, and it submitted Jones's medical records from FCI Gilmer as an exhibit to its Response.  (Docs. 158-2, 158-3.)

**II.     STANDARD OF LAW GOVERNING COMPASSIONATE RELEASE**

The Court lacks authority to resentence a defendant, except as permitted by statute. *United States v. Houston*, 529 F.3d 743, 748–749 (6th Cir. 2008).  The compassionate release provisions in 18 U.S.C. § 3582(c)(1)(A) were "intended to be a 'safety valve' to reduce a sentence in the 'unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner.'" *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (quoting S. Rep. 98-225, at 121 (1983)).  A defendant seeking sentence a reduction bears the burden of proving entitlement to compassionate release.  *Id.* at 426; *United States v. Hill*, No. 5:14CR337, 2020 WL 5104477, at *1 (N.D. Ohio Aug. 31, 2020).  Section 3582(c) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by

the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Exhaustion of administrative remedies is a mandatory claim-processing rule. *United States v. Alam*, 960 F.3d 831, 833–834 (6th Cir. 2020). Assuming that the inmate has exhausted administrative remedies, the district court must (1) find that "extraordinary and compelling reasons" warrant a reduction and (2) weigh the relevant sentencing factors listed in § 3553(a). *United States v. Jones*, 980 F.3d 1098, 1101, 1106 (6th Cir. 2020).[3] The § 3553 factors referenced in the statute include (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. § 3553(a). These factors implicitly allow the Court to consider the amount of time served when determining if a reduction in sentence is appropriate. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020). District courts are encouraged to be "explicit and particular with their factual reasoning" when they consider the § 3553(a) factors. *Jones*, 980 F.3d at 1113.

---

[3] The Sixth Circuit has determined that the only U.S. Sentencing Commission Policy Statement potentially applicable to motions for compassionate release—U.S.S.G. § 1B1.13—is inapplicable to cases filed by federal inmates. *Id.* at 1109, 1111. Therefore, the district court has full discretion to define "extraordinary and compelling reasons" without reference to the policy statement in § 1B1.13. *Id.* at 1111; *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

5

### III.    ANALYSIS

Jones exhausted his administrative remedies by requesting a sentence reduction from the Warden of FCI Gilmer on June 22, 2020.  (Doc. 158-1 at PageID 459.)  He argued that because he is "a diabetic" it is "very dangerous for [him] to be exposed to the covid 19 virus."  (*Id.*)  The Warden denied his request in a response dated June 29, 2020.  (*Id.* at PageID 456.)  Approximately six months later, Jones filed the pending Motion for Compassionate Release in which he again argued that he is at risk for severe illness if he is exposed to COVID-19.

COVID-19 is caused by severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2) and was recognized as a pandemic in March 2020.  However, courts in the Sixth Circuit have held that the existence of COVID-19 in society and the generalized risk of contagion in prisons standing alone are not sufficient to constitute extraordinary and compelling reasons for a reduction in sentence under § 3582(c).  *See*, *e.g.*, *United States v. Parks*, No. 3:18-CR-006, 2020 WL 7364982, at *3 (E.D. Tenn. Dec. 15, 2020) ("[T]he COVID-19 pandemic cannot alone justify compassionate release."); *United States v. Dorn*, No. 3:19-CR-014, 2020 WL 6343064, at *5 (S.D. Ohio Oct. 29, 2020) ("The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, . . . could not alone provide a basis for a sentence reduction.").

Jones suffers from serious health ailments.  The Centers for Disease Control has identified Type 2 diabetes and obesity as conditions which make adults "more likely to get severely ill from COVID-19."  CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed 3/31/2021).  The Court need not address hypothetical risks in this case, however.

Jones tested positive for COVID-19 on January 4, 2021.  (Doc. 158-3 at PageID 625, 681.)[4]  One medical record from prison indicated he was asymptomatic, but another indicated that he complained of symptoms.  (*Id.*)  He was removed from isolation on or about January 14, 2021.  (*Id.* at PageID 624.)  Fortunately, there is no evidence that Jones became severely ill after contracting COVID-19.  No medical records indicate that Jones required special medical intervention to treat the illness.  Nor do any records suggest that he has experienced long-term complications from COVID-19.  The Court cannot in these circumstances conclude that COVID-19 presents an extraordinary and compelling reason to grant Jones a compassionate release from prison.  *See*, *e.g.*, *United States v. Littles*, No. 15-20317, 2020 WL 4346962, at *1, 4 (E.D. Mich. July 29, 2020) (denying compassionate release to a COVID-19-recovered inmate); *United States v. Clark*, No. 3:09-CR-90-CRS, 2020 WL 3977652, at *4 (W.D. Ky. July 14, 2020) (same).

Moreover, the § 3553(a) factors weigh against compassionate release as well.  The seriousness of Jones's offenses must be emphasized.  Jones pleaded guilty to committing two armed bank robberies.  His co-defendant engaged in a gunfight with an off-duty police officer during the May 22, 2017 bank robbery putting innocent lives at risk.  (Doc. 127 at PageID 331.)  Jones   concedes that the bank robberies caused "irreparable harm" to bank employees.  (Doc. 110 at PageID 276.)  Further, Jones poses a risk of committing future crimes if he was released.  Prior terms of state incarceration did not deter Jones from committing the bank robberies for which he is now imprisoned.  Finally, the majority of the mitigating facts which he asserts weigh in favor of reducing his sentence—his history of substance abuse, behavioral health issues as a youth, and depression and drug use following the death of his mother—were known to the Court when the Court agreed to impose the 204-month term of imprisonment recommended in the Plea

---

[4]  Neither party discussed in their briefs that Jones had tested positive for COVID.  He contracted the virus between the time he filed his *pro se* Motion and his appointed attorney filed the Supplemental Motion.  The Court found the relevant medical records in the more than 200 pages of prison medical records submitted by the Government.

Agreement.  Jones also asserts that he had adjusted well to life in prison by enrolling in trade courses and not committing any infractions.  Although the Court commends Jones for making progress towards a more productive future, these facts are not a sufficient basis to justify releasing him from prison ten years before his estimated release date.

## IV.     CONCLUSION

For the reasons stated above, Jones's Motion for Compassionate Release (Doc. 149) and Supplemental Motion for Compassionate Release (Doc. 156) are **DENIED**.

**IT IS SO ORDERED.**

BY THE COURT:


S/Susan J. Dlott
Susan J. Dlott
United States District Judge

8